We'll hear the next case on the calendar, Pangea Capital Management. Good morning, Your Honors. May it please the Court, my name is Caitlin Brawner. I'm counsel for Pangea Capital Management, LLC. The primary issue before this Court on appeal is whether a divorce judgment awarding an interest in real property entered pursuant to Section 236 of the DRL must be docketed pursuant to CPLR 5203A in order to have priority over a subsequent duly docketed judgment. In this case, the District Court found that the answer to this question was no, and that Andrea Lakey and the intervener in this proceeding need not docket her divorce judgment in order to have priority with respect to certain real property in Suffolk County. The District Court, as I understand it, at one point seems to suggest this would be a good case for certification, but it doesn't have the authority to certify. Why shouldn't we certify? There is no precise decision of the New York Court of Appeals that precisely resolves the question. Why isn't this a classic case for certification? Thank you, Your Honor. The standard for certification is that it is an exceptional procedure to which this Court resorts only in appropriate circumstances. Appropriate circumstances are present where the statute's plain language does not indicate the answer to the question pending before the Court, and there is an absence of authoritative state court interpretation of the state statute. In this case, it's respectfully submitted that there are no appropriate circumstances for certification because it is apparent from the plain language of CPLR 5203A coupled with CPLR 5203C and its legislative history that Andrea Lakey's divorce judgment needed to be docketed. Would you make the argument relating to 5203C before the District Court? Your Honor, certainly CPLR 5203. Would you make the argument before the District Court relating to 5203C? No, Your Honor. CPLR 5203C is related to an argument which Pangea did advance under CPLR 5203A, which is the basis upon which. You argued 5203A, but you did not make this argument that you're making today about 5203C and how it sheds light on 5203A. Is that correct? The short answer, Your Honor, is no, but respectfully, we did not believe that there was any need to do so because Pangea is proceeding under CPLR 5203A, and there's no question that we believe. We submit that there's no question from the plain language of CPLR 5203A that docketing is required, as confirmed by this Court in its decision in Musso v. Oshkoshko. CPLR 5203C, again, can absolutely be considered by this Court because it advances the arguments that Pangea makes with respect to CPLR 5203C advance no new legal arguments. They require no additional fact-finding and are simply related to an argument. Doesn't Musso make clear that the key is the entry of the judgment of divorce and that upon entry of the judgment of divorce, the divorce decree, property rights vest. I mean, whatever inchoate rights there were, they vest upon the entry of the divorce decree. Your Honor, certainly Musso speaks of entry, but one of the four relevant premises of this Court's holding in Musso is that equitable distribution awards are remedies, subject to the enforcement of which is no— They're remedies, but once the divorce decree is entered, don't the property rights vest at that point? It becomes her property at that point, and it's not a matter of whether she's a judgment creditor. She's a property owner at that point. Your Honor, Musso speaks of how maybe as between Andrea Lakian and John Lakian, her property interest was fully vested with respect to John. But as to the rights of third parties, such as Pangea here, it's necessary— If it is not John's property, then they are not competing with Andrea. Isn't that so? Respectfully, it is not so, Your Honor. Again, it is plain from the face of CPLR 5203A that docketing is required for property awards— Well, the divorce decree is filed, right? And in that sense, it's docketed the moment it becomes a decree. It's docketed in New York County in this case, Your Honor, but the real property was located in Suffolk County. Accordingly, it was not docketed in Suffolk County as it was required to be. Taken together— Did it not become her property at the moment the divorce decree was entered in New York County? She was required to docket it because the real property was located in Suffolk County, Your Honor. Again, it's respectfully submitted— What says that, that it doesn't become co-ate until there's a further docketing of the already filed decree in the county where the property is located? Well, that, Your Honor, is respectfully submitted. That is apparent from CPLR 5203C, and particularly its legislative history, which notes that matrimonial and commercial actions in state courts routinely result in the awards of real property interests, and that because docketing affects legal ownership and the docketing date determines the seniority of competing property interests, see CPLR 5203A, this brief delay invites mischief. So certainly the legislature of New York, in enacting CPLR 5203C, was aware of the requirement that not only money judgments but also divorce judgments must be docketed. Have there been any definitive opinions of the New York Court of Appeals in the aftermath of the New York State Legislature's action? No, Your Honor. The Court of Appeals has not yet addressed this issue. Is there in any New York State court that directly held that an interest in real property granted in an equitable distribution award under DRL 2365A or a separation agreement under 236B-3 must be docketed in order for that interest to take priority over a lien by a judgment creditor? I want a direct case on point. No, Your Honor. It's plain. We submit from the face of the statute and its legislative history. So this is, you know, really in many ways involves interpretation of state law. And I come back to the question, wouldn't it be appropriate to certify to the New York Court of Appeals? Your Honor, again, we believe that there are no appropriate circumstances because it is so apparent from the plain— Is there any other objection? No other objection. So if I may proceed, again, CPLR 5203A lays out the steps a judgment creditor must take in order to establish rights in the debtor's real property, which include docketing. This Court's decision in Musso confirms the applicability of those steps with respect to equitable distribution awards. And CPLR 5203C confirms that the same rules of docketing apply in the case of divorce judgments. Accordingly, because Pangia docketed its judgment and Andrea Lakian did not do so, Pangia had priority with respect to the entirety of John Lakian's interest in the property, which, as a matter of New York trust law, amounted to 100 percent. Didn't the Court of Appeals in—the New York Court of Appeals in Kaplan v. Kaplan strongly suggest that marital property is just different categorically when you are dealing with issues of other judgment creditors and so on? Your Honor, respectfully, CPLR 5203C and its legislative history confirm that, in point of fact, there is no difference and that divorce judgments are not treated any differently than ordinary money judgments affecting interest in real property. So respectfully, I believe that the answer that the legislature— To the extent that there was any ambiguity, the legislature overrode the New York Court of Appeals. Correct, Your Honor. So, again, the interest that Pangia attached, we believe, was 100 percent as a matter of New York trust law. In particular, the trust at issue here, which owned the property, the Gems II Realty Trust, was a solely self-settled trust settled by John Lakian. It was a revocable trust, and the property that was deeded to the trust was deeded by John Lakian, who took title in his own name and conveyed it to the trust. And under EPTL 10-10.6 and 7-3.1a, creditors of the settler of a revocable trust may reach trust assets because the settler is deemed the absolute individual owner of the trust race, and self-settled trusts are void as against the creditors of the settler. Accordingly, we believe under these various provisions that John Lakian was tantamount to the absolute individual owner of the trust race, such that Pangia, by being the first to have docketed its judgment in Suffolk County, had priority with respect to the entirety of the property. Thank you, Your Honors. You'll have two minutes in rebuttal. Thank you. Good morning, Your Honors. Judith Richman for Appellee Andrea Lakian. The argument by Pangia was thoroughly and completely dissolved by Judge Kaplan when he properly decided, based on 40 years of settled law, that a judgment of divorce when the decree is entered in equitable distribution, which is a sea change in the law in traditional legal concepts, both causes the divorce and defines what property was marital, values it, and in the decree distributes it between the parties. We have a different argument that was not before Judge Kaplan relating to 5203C and the legislative history. And your adversary tells us that if we look at that, it makes it clear that 5203A does require docketing, even in connection with marital property and a divorce decree. I think that is incorrect. First of all, they did not argue 5203C below, and they should not. Okay. And I believe in this situation, having them extend their rights to do so when their filing was on bad faith to begin with would be improper. In this situation . . . Humor us. Humor us for a moment, and if you could answer Judge Lauier's question. My pleasure. But 5203C does not affect this case. 5203C is simply and solely applicable in bankruptcy cases. It is applicable in commercial cases as well as matrimonial cases. In commercial cases, yes, there is a docketing of a judgment creditor in the county. That is not this case, and we are not a judgment creditor. And . . . Doesn't that suggest, I mean, your argument suggests that maybe we should certify to the New York Court of Appeals. In other words, there's a question. It could be, as you interpret the New York State Legislature's action, it could very well be that. But there's another view, and this seems to be the kind of thing that the New York Court of Appeals is in a better situation, at least more appropriate to have them answer that question than for us to answer it. Well, I think, Your Honor, that this is not the right case for certification in this because of three reasons. One is that there are other issues, including the trust issue. This is not real property. On the divorce judgment, Mrs. Lakian was entitled to and invested a greater interest in the Gems to her trust property than she had before. Title did not change. Title . . . She held, because she was a tenant . . . In common. In common. She was an owner of part of the property already. Correct. She was a 50 percent interest owner in the Gems to trust, beneficial owner. Divorce decree really only has an impact as to the portion above 50 percent. Correct, Your Honor. That was the only portion that remained in COE. Correct. During the preceding . . . The position is that even before the entry of the divorce decree, she, as a tenant in common, under the terms of the trust, she owned half of that property. Correct, Your Honor. And this was not an active trust. This is a passive trust. This is a nominee trust under what Massachusetts law calls . . . She was the beneficial owner of 50 percent. After . . . That was an inchoate right during the matrimonial. After the matrimonial, when the decree was entered, her rights vested to more than 50 percent. Title never changed. Gems to was the title owner before the matrimonial. Gems to was the title owner during the matrimonial. Gems to was the title owner subsequent to the matrimonial. Her interest in the Gems to trust changed. So, this is . . . So, that is one reason. So, 5203C doesn't apply to them on that basis. 5203C says strictly, it's solely with respect to bankruptcy issues. There was no bankruptcy. So, 5203C is not relevant for this case for that reason. 5203C . . . Again, I come back to the fact that because of their filing, which they told the court and they represented to the court . . . They were doing it solely for other judgment creditors. That this is not a case where that issue could be answered because of the bad faith. And, that is the only reason they're here because they said the filing, which they represented . . . wouldn't be used in this case to allege any difference in their rights with Mrs. Lakian. And finally, because the courts, starting with O'Brien, the Court of Appeals, through other Court of Appeals cases . . . through Rainbow Swisher, through Darling, through McDermott, an appellate division case . . . These cases have been cited over a thousand times for the same purpose saying . . . that fundamentally and absolutely, when the divorce decree is entered . . . the rights of the parties' equity distribution assets are determined. The other parties' rights are extended. The argument about that 5203C is reserved exclusively for bankruptcy proceedings. Set that aside. Is there a single case on point, since 5203C? I think there are a number of cases that have come down, that simply continue with the law that has been settled law . . . With this issue of docketing in the context of equitable distribution and divorce proceedings. I don't think that there have been any cases that have cited that because none of them . . . Two reasons. One is that it doesn't relate to most cases in matrimonial actions. Because it relates to many actions, but not specifically in matrimonial actions. And secondly, because the law is settled, that the asset is owned. Whether an asset is personality or real property, it certainly wouldn't, under any circumstances, limit 236B. Does Mrs. Lakian face any financial impediment to proceeding in front of the New York Court of Appeals, if we were to certify? Absolutely, Your Honor. Mrs. Lakian received this property after approximately 40 years of marriage . . . where she built what she thought was a very substantial estate. She was a devoted wife and mother and grandmother. She was a school teacher who had nothing but what she built in her marriage. She found out, to her incredible dismay and hurt, that her husband had stolen most of her property . . . along with the husband's paramour, that they had taken the matrimonial property, virtually all of it. The only thing that she had left . . . She gave up all other property. She gave up her rights to support. She gave up her right to everything. After a very contentious and heart-wrenching matrimonial action, to receive a portion of the house that she built . . . where the money for the house that she built had come from other properties that she had built . . . during the marriage, during the 90's, during the 80's. And, they sold the property in Massachusetts for $10 million. And, she along with her architects, helped build this property where she had her children, her grandchildren, her life. This is all that's left. This question was certified to the New York Court of Appeals. And, there might be one or two questions. It's not something that is necessarily resource-intensive. It's something that the New York Court of Appeals is just in a better position to decide and more appropriate to decide. But, in this situation, the Court of Appeals, it is not necessarily determinative of this action. There are the issues with the trust. It was a nominee trust. She owns the property as a nominee trust. There are the issues of the bad faith. The Court of Appeals, and there are the issues that every case for 40 years has said, basically, that when a case, when a decree is entered, the equitable distribution assets are determined, and the other person's rights are extinguished. All that means is that your argument will be very simple and easy. And, it means it will be longer and more expensive. But, it wouldn't necessarily . . . You're telling us that every case is on your side, so . . . I believe they are. I believe they are, but I believe that there is no . . . that this is not the proper case to do it because there is no reason, and this case wouldn't necessarily make that determination under any circumstances because there are other issues in this case. And, I believe that when . . . The issue before us, as I understand it, rests on a reading of 5203A. Is that correct? She's not . . . The only issue before us is that issue. But, she is . . . Docketing or no docketing? There has never . . . She is not a judgment creditor, and the case is . . . I understand that. I'm trying to understand. You're telling us that there are other sequelae, there are other issues. There could be, right. The issue before our panel is binary. Was she required to docket or not? That's what's been presented. And, there . . . Is that right? I think that what has been presented is a question of, is she a judgment creditor or is she an owner? And, the courts have answered that she's an owner. And, 5252 . . . But, the argument that's being made is that she did not docket the judgment, and, therefore, Pangea should prevail. And, your argument is she did not need to docket, and, therefore, she prevails. And, there has never . . . Why is that not a binary decision? There has never been . . . There has never been a case . . . There has never been a provision that said that she had to docket. And, that's not 5203A, because there is no requirement for docketing. And, they are simply . . . They are creating an issue which doesn't exist. Here's a simple question. First, are interests in real property allocated in an agreement pursuant to NY DRL 236B3, and later incorporated by reference into a judgment of divorce, subject to the docketing requirement of New York CPLR 5203, such that a spouse who has allocated such an interest must docket the judgment of divorce in the county where the real property is located? If that interest is to take priority over perfected liens against the real property by judgment creditors? It's a simple . . . It's not . . . I'm saying that it's a simple analysis, but the question is direct. And then, if the answer to that is yes, then the question is where a nominee trustee, which is designed merely to hold title to property for the beneficiaries, has one individual as a settler, the trustee and a beneficiary, and the trustee may revoke the trust, is the trust property considered conveyed to the beneficiaries as with a passive trust, or is the settler deemed the absolute owner of the entire trust property relative to his creditors? That's only if the answer to one is yes. But if the answer to one is no, then that resolves the case. Okay. I think that the answer to one is no, but I don't think the question is, we don't have an allocation of real property. I'm just saying to you that if this is before the New York Court of Appeals, it is a basic question for them to answer. But . . . I apologize. It's not one of those hugely resource-intensive cases involving lots of different investigations. No, I understand that. So that's . . . But on that issue alone, that is potentially another year when . . . No, that's not how the New York Court of Appeals works. They're very good at taking cases fairly promptly and then resolving them very promptly. They're very proud of that record. Okay. Whatever amount of time it takes, whether it is an extra day, an extra month, an extra number of months, it is prejudice to Mrs. Lakin, who is in her 70s, and the equitable distribution laws say that the equitable distribution decisions are final and cannot be modified, by the way. They cannot be modified. That has been found by the courts. The other thing is, this was not an allocation, as you say, of real property. So, again, I don't believe this is the right case for certification. So those are the two issues. And the other thing is, on the trust, just one other issue is, there was never a right to revoke without terminating. So on all of those issues, that is my position. Thank you, Your Honor. Thank you. Thank you. Let me ask you, on 5203C, you're relying on that. If you look at the, it appears at special appendix at 33. The last three lines say solely for purposes of establishing the priority thereof against a judicial lien created upon the simultaneous or later filing of a petition in bankruptcy. I mean, why isn't this limited to bankruptcy questions and priorities? And even 5203A talks about the transfer of an interest in real property against which a money judgment may be enforced. This whole section is about priority of liens, and then 5203C on its face seems directed at bankruptcy situations. Thank you, Your Honor. The use of the word solely in CPLR 5203C plainly refers to the priorities that are created and not to the docketing requirement. So notwithstanding that CPLR 5203C addresses the bankruptcy context, the docketing requirement as addressed in both A and C applies outside the bankruptcy context. Just stepping back for a moment, 5203 is entitled Priorities and Liens Upon Real Property. And so it's addressing the situation where two competing creditors are putting a lien on the debtor's property. Right? Your Honor, the legislative history of CPLR 5203C confirms that beyond the reference to judgment creditors in 5203A, in point of fact, CPLR 5203C, well, both provisions. Does it apply if the property in question is not the debtor's property but someone else's property? Well, in this situation, the property we respectfully believe is the debtor's property. Is it bankruptcy action? This is not a bankruptcy action, Your Honor. Again, just to be clear, if the court were to find that the docketing requirement outlined in both subsections A and C were to only in divorce actions apply where there's been an intervening bankruptcy, that would create positive repugnancy between CPLR 5203A and DRL 236 by requiring only a certain subspecies of divorce judgments to be docketed solely where there's been an intervening bankruptcy filing, which is not — there's nothing in CPLR 5203A or C that suggests that there was any legislative intent to create such a distinction. If I may also respond to several of the other points advanced by Counsel for Mrs. Lakian. If we were to disagree with you and deem 5203C to be reserved for bankruptcy actions, would you be able to prevail? If CPLR 5203C were reserved solely for bankruptcy actions, we — well, again, we respectfully — Could you prevail? Yes, Your Honor. We've always maintained that we — that our right — our path to priority here is under CPLR 5203A. We only refer to CPLR 5203C to confirm that the bankruptcy — excuse me, that the docketing requirement extends to divorce judgments, which is a position that has been disputed by Mrs. Lakian. With respect to — with respect to Mrs. Lakian's argument that she was the 50 percent owner of the GEMS II Trust at all relevant times, under the theory that the trust at issue was a nominee trust, in point of fact, it's apparent that the trust was not a nominee trust. Nominee trusts are unique to Massachusetts law, and this trust, GEMS II, unlike two other trusts created by Mr. Lakian, GEMS I and III, which were expressly governed by Massachusetts law, is silent regarding governing law and is thus governed by New York law as the local law of the situs of the property and the state in which John as the sole settler was domiciled. So accordingly, because this is a New York trust, not a Massachusetts trust, it's not a nominee trust. It also doesn't have the hallmarks of a nominee trust because it reserves a right of revocation to Mr. Lakian. And contrary to my adversary's statement, that right of revocation is not linked to the right of termination. It is an independent right of revocation. Could you finish, complete your argument? Excuse me, Your Honor? A couple of times. Oh, I apologize. May I have a moment to address the bad faith point? Okay. Thank you, Your Honor. With respect to the bad faith argument advanced by Mrs. Lakian, this is simply not a situation where there was in any way, shape, or form bad faith on the part of Pangaea's counsel. Specifically, when Pangaea's counsel said that Pangaea would not interfere with what's going to happen with the property pending not only what we've talked about today, but a determination of who's entitled to what from the proceeds of the sale, counsel was clearly referring to the specific negotiated sale of the property discussed at the outset of the October 28th argument at pages A23 to 27 of the record, and to submitting to the district court's ongoing ancillary jurisdiction to determine the party's respective rights to the sale proceeds, also discussed earlier in that conference at pages A23, A25, and A46 to 47 of the record. The point at issue here is that all, everybody knew that Pangaea was going to docket this judgment. The district court specifically indicated that Pangaea would docket this judgment, and in fact, Andrea Lakian's counsel wrote to the district court in trying to prevent entry of the judgment, specifically identifying the fact that Pangaea was going to docket this judgment in Suffolk County. By doing so, there was absolutely no bad faith, and had Pangaea's counsel not docketed the judgment, there would have been a question of malpractice. Thank you, Your Honors. Thank you both for your arguments. The court will reserve decision. Final cases are on submission. Clerk will adjourn the court.